UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>Pearl Maxwell,<br>Debtor | Case Number: 00-14283<br>Chapter 13 |
| Pearl Maxwell,<br>    Plaintiff<br>v.<br>Fairbanks Capital Corporation,<br>    Defendant | Adv. Pro. No.<br>00-1568 |

ADVERSARY COMPLAINT

I.  Introduction

1. Foreclosing Creditor-Defendant Fairbanks Capital Corporation seeks to take the home of eighty-two year old Pearl Maxwell as the "good faith holder in due course" of a refinanced note and mortgage that required monthly interest payments equaling almost 100% (one hundred percent) of her and her co-debtor's total monthly income with a final balloon payment greater than the entire principal amount. Under this claimed note, the Creditor-Defendant has alleged total debts, and demanded full payments of: (1) $264,603.13 (April 16, 1998), (2) $363,603.38 (April 23, 1998), (3) $121,948.38 (July 13, 1999), and (4) $319,463.24 (May, 2000). The Creditor-Defendant has also filed a "lost note" Affidavit in this Court claiming that the Creditor lost the note before the date the same Creditor claims to have bought the



note, has asserted that the amounts claimed include ongoing Ginnie Mae or Fannie Mae interest payments (even though Ginnie Mae or Fannie Mae never owned or insured the note), has been unable to show any evidence that the Creditor in fact purchased the note or the amount of the note's purchase price, and has told Mrs. Maxwell that the note was being returned to a prior lender as uncollectable.

Based on these facts, Plaintiff disputes Defendant's ownership of the note and mortgage, seeks rescission of the Note and Mortgage, invalidation of the debt, and other equitable relief, along with actual, statutory and punitive damages for the violations of Truth-in-Lending Acts, Federal and State Debt Collection statutes, and various Consumer Protection statutes along with costs, fees and other necessary relief.

2. This matter is a core proceeding, creating jurisdiction under 11 U.S.C. § 1343 and 28 U.S.C. § 157, as amended.

## II.    Parties

3. Debtor-Plaintiff, Pearl Maxwell, hereinafter "Debtor" or "Debtor-Plaintiff," is an adult senior citizen residing at 49 Stockton Street, Dorchester, a two-family home ("the premises"), and a Debtor in this Court pursuant to a Petition filed under Chapter 13 of the Bankruptcy Code on June 22, 2000.

4. Defendant, Fairbanks Capital Corporation, hereinafter "Creditor" or "Defendant," is, upon information and belief, a Utah Corporation, with a principal place of business at 3815 South West Temple, Salt Lake City, Utah.

5. Defendant, upon information and belief, is a "debt collector" within the meaning of the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., a licensed Collection Agency pursuant to Mass. G.L. c. 93, § 24, and a "servicer" within the meaning of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i)(2).

6. Upon information and belief, Defendant claims to be the holder of a note dated on or about February 12, 1991 given by Pearl Maxwell and Maritza Ranger to Aetna Finance Company d/b/a ITT Financial Services in the original amount of $149,150.50, which note is secured by a first mortgage on the Debtor's premises.

7. The Debtor's obligation under the note was incurred primarily for personal, family or household purposes.

### III.  Factual Allegations

### First ITT Loan

8. In the Winter or early Spring of 1988, Debtor was approached by a door-to-door salesman who suggested a variety of "home repairs" to Debtor including replacement of siding and insulation of windows.

9. This salesman referred Debtor to ITT Financial Services ("ITT") in order to finance the "repairs" and consolidate her other outstanding obligations.

10. On April 13, 1988, Debtor consolidated her existing obligations and funded the suggested home repairs by borrowing $137,611.01 from ITT ("First ITT Loan"). The First ITT Loan was secured by a first mortgage on the Debtor's premises which was recorded with the Suffolk County Registry of Deeds at Book 14019, Page 130.

11. From the proceeds of the First ITT Loan, $22,602.08 was paid to "Customer and Vinyl Distributors." This payment was made before the work was done, and despite this payment the promised repairs were never completed.

12. The full amount of the First ITT Loan included $12,659.40 of fees and prepaid finance charges: making these charges more than 10% of the amount financed.

13. Only $101,280.73 of the First ITT Loan proceeds ($137,611.00) went to payoff Debtor's existing obligations.

14. The term of the First ITT Loan was 180 months (15 years) with an Annual Percentage Rate of 16.78%.

15. The Debtor's regular monthly mortgage obligation under the First ITT Loan was approximately $1,908.00.

16. At the time of the First ITT Loan, Debtor had an annual income of approximately $10,000.00 and Maritza Ranger (Co-debtor) had an annual income of approximately $22,000.00. Debtor and Co-debtor's combined annual income was approximately $32,000. The annual mortgage obligation under the First ITT Loan was $22,896.00, or 76.3% of Debtor and Co-debtor's annual combined income.

**Second ITT Loan**

17. On February 12, 1991, ITT refinanced the First ITT Loan with the Second ITT Loan, which had a principal amount of $149,150.50. Debtor was told by representatives of ITT that the refinancing would reduce her monthly payment. The Second ITT Loan was secured by a first mortgage on the Debtor's premises which is recorded at the

4

Suffolk County Registry of Deeds at Book 16710, Page 282.

18. Upon information and belief, the Second ITT Loan was for a term of 5 years with a balloon payment in excess of the total loan amount due at the maturity of the loan.

19. Upon information and belief, the Annual Percentage Rate for the Second ITT Loan was in excess of 16%.

20. Upon information and belief, the Debtor's regular monthly mortgage obligation under the Second ITT Loan was approximately $2,005.00.

21. Upon information and belief, the Second ITT Loan was negatively amortized, meaning that the monthly payment of $2,005.00 was insufficient to pay the interest accruing on the account, and the Debtor's final balloon payment would have been greater than the original amount of the loan.

22. At the time the Second ITT Loan was consummated, ITT did not provide the Debtor with the required disclosures under the Truth in Lending Act, Regulation Z, and the Massachusetts Consumer Credit Cost Disclosure Act. Further, Debtor was not informed that a balloon payment would be required at the maturity of the loan.

23. At the time of the Second ITT Loan, Debtor had an annual income of $4,000.00 and Co-debtor had an annual income of approximately $22,000.00. Combined Debtor and Co-debtor had an annual combined income of approximately $26,000.00. The annual mortgage obligation under the Second ITT Loan was $24,060.00, which was almost 100% of Debtor and Co-debtor's annual combined income.

5

24. In 1993, ITT and Debtor agreed to reduced payments in the amount of $800.00 per month. ITT did not inform Debtor that this reduced payment would result in further negative amortization of her loan and increase the amount of the balloon payment at maturity.

25. Upon information and belief, ITT assigned the note and mortgage for the Second ITT Loan to TransAmerica Financial Services ("TransAmerica") in mid-1995.

26. When the note for the Second ITT Loan matured in February 1996, TransAmerica did not renew or extend the note pursuant to Mass G.L. c. 183, § 60. However, TransAmerica did continue to accept payments from the Debtor in amounts ranging from $200 to $3,062.55. Upon information and belief, not all the payments made were credited to Debtor's account.

**Post-Maturity**

27. In December 1997, Sandra M. McKee ("McKee"), Foreclosure Prevention Counselor at the Ecumenical Social Action Committee, made a direct request on behalf of Debtor for copies of the original loan documents to TransAmerica. No response to this request was received.

28. By letter dated December 31, 1997, TransAmerica advised Debtor that her mortgage loan was being assigned to the Defendant, effective January 16, 1998.

29. By letter dated April 14, 1998, McKee requested, on behalf of Debtor, payoff figures for the Second ITT Loan from Defendant.

30. By letter dated April 16, 1998 from Defendant to McKee, Defendant indicated that the payoff amount for the loan was $264,603.13. That amount consisted of $149,925.22 in principal, $113,927.91 in interest, and $750 for Force Placed Insurance.

31. By letter dated April 23, 1998 (7 days later) from Defendant to Debtor, Defendant indicated that the amount due to pay the Second ITT Loan in full was $363,603.38 consisting of $299,850.44 in payments and $63,752.94 in delinquent interest payments.

32. By letter dated April 24, 1998, Debtor requested copies of the original loan documents from Defendant.

33. In May 1998, Defendant informed McKee that the original loan documents would most likely not be located and the loan would be sold back to TransAmerica because it was "inoperable."

34. Because Defendant refused to provide Debtor or McKee with the original loan documents for the Second ITT Loan, Debtor was unable to receive further assistance from the Ecumenical Social Action Committee or its partner in foreclosure prevention for the elderly, the Appleseed Bank Program.

35. By letter dated July 13, 1999 from Defendant to Debtor, Defendant informed Debtor that the amount due and owing was $121,948.38.

36. By letter dated July 18, 1999 from Debtor to Defendant, Debtor requested a short-payoff in the amount of $114,750.00. The letter noted that the estimated time to close the refinancing would be approximately four (4) weeks. Debtor also provided an

account of her severe medical difficulties.

37. Defendant rejected the Debtor's offer of July 18, 1999.

38. By letter dated October 19, 1999 from Debtor to Defendant, Debtor requested a short-payoff in the amount of $192,000.00. The letter stated that the estimated time to close the refinancing would be approximately four (4) weeks.

39. By letter dated November 18, 1999 from Defendant to Mr. Harold Raymond, a mortgage counselor with the Veterans Benefits Clearinghouse Mortgage Corporation, Defendant accepted an offer for a short payoff in the amount of $190,463.00. However, Defendant gave Debtor only twelve (12) days, instead of four (4) weeks, to obtain the necessary financing to payoff the loan. At the time the Defendant offered this twelve (12) day payoff deadline, Defendant knew that it was likely to be impossible for Debtor to meet this deadline.

40. Defendant scheduled a foreclosure auction for the premises for December 9, 1999.

41. On December 7, 1999, Debtor filed a pro se Voluntary Petition under the United States Bankruptcy Code Chapter 13, which was assigned docket number 99-19685. Subsequently, this case was dismissed.

42. Defendant scheduled a foreclosure auction for the premises on June 22, 2000.

43. On June 22, 2000, Debtor filed a pro se Voluntary Petition under the United States Bankruptcy Code Chapter 13, which was assigned docket number 00-14283.

44. In its Motion to Lift the Automatic Stay, Defendant asserted that the amount needed to payoff the Second ITT Loan as of June 22, 2000, the date of Debtor's filing, was $319,463.24.

45. Defendant submitted a Lost Note Affidavit in support of its Motion for Relief from the Automatic Stay. Defendant does not state in its affidavit that it is the holder of the Note or that it was in possession of the instrument and entitled to enforce it when the loss of possession occurred.

46. Debtor has reason to believe that Defendant was not in possession of the instrument and entitled to enforce it when the loss of possession occurred.

47. The Lost Note Affidavit provided by Defendant is dated July 6, 1999. The purported assignment of from Transamerica Financial Services to Defendant is dated October, 1999. Upon information and belief, the Lost Note Affidavit precedes the assignment of any rights to the Defendant.

48. On or about August 20, 2000, Debtor, by her counsel, requested from Defendant, through its counsel, the original loan documents for the Second ITT Loan and inquired as to the amount Defendant had paid for the Note related to the Second ITT Loan.

49. On or about October 6, 2000, Defendant, through its counsel, informed Debtor that the "amount paid" for the note was $333,964.00 because Defendant had been paying interest to Ginnie Mae or Fannie Mae through a loan servicing pool.

50. Upon information and belief, neither Ginnie Mae or Fannie Mae ever owned this loan and the loan never met the Ginnie Mae or Fannie Mae loan standards.

51. To date, no documentation regarding the Second ITT Loan has been provided by Defendant.

52. To date, Defendant has failed to provide a clear, understandable and appropriate accounting of any sums allegedly owing, and of those sums paid by the Debtor.

53. To date, Defendant has failed to provide adequate evidence that it was the holder of the note or is presently the holder of the note related to the Second ITT Loan.

### IV.     Applicable Law

54. The Fair Debt Collection Act ("FDCA"), 15 U.S.C. §§ 1692, et seq., makes it unlawful to use any false, deceptive, or misleading representation or means to collect a debt, including (a) the false representation of the character, amount or legal status of any debt, or (b) the threat to take any action that cannot legally be taken. 15 U.S.C. § 1692e(2)A, (5).

55. The FDCA similarly makes it unlawful to use unfair or unconscionable means to collect or attempt to collect a debt, including as here relevant, the collection of any sum "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1).

56. The Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq., requires any servicer of a federally related mortgage loan to provide to the borrower, within 60 days of receiving a qualified written request, the information requested or an explanation of why the information is unavailable. 12 U.S.C. § 2605(e).

57. The Federal Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., ("TILA") requires that a creditor disclose the principal amount of the loan, the finance charge (itemized in some circumstances), the annual percentage rate, total of payments, and number amount and due dates or period of payments scheduled to repay the total of payments. 15 U.S.C. § 1638. Further, the TILA requires the creditor to provide the obligor with notice of her right to rescind. 15 U.S.C. § 1635.

58. The Massachusetts Consumer Credit Cost Disclosure Act, Mass. G.L. c. 140D, §§ 1, et seq., ("MCCCDA") requires that a creditor disclose the principal amount of the loan, the finance charge (itemized in some circumstances), the annual percentage rate, total of payments, and number amount and due dates or period of payments scheduled to repay the total of payments. Mass. G.L. c. 140D, § 12. Further, the MCCCDA requires the creditor to provide the obligor with notice of her right to rescind. Mass. G.L. c. 140D, § 10.

59. Mass. G.L. c. 183, § 60 requires, at the option of a mortgagor, the automatic renewal or extension of a note secured by a first mortgage lien on, inter alia, an owner occupied two-family home, where the note will not amortize the outstanding principal by maturity.

60. Mass. G.L. c. 183, § 63, prior to 1994, prohibited mortgagees from charging a loan fee, finder's fee, points, so called, or similar fees in a mortgage transaction involving residential property except to the extent such fees or points constituted reimbursement for reasonable originating or underwriting expenses and reimbursement for any commitment or other fees paid or to be paid by the mortgagee.

61. The Attorney General's Regulations promulgated under the Massachusetts Consumer Protection Act provide, as here relevant, that an act is unfair or deceptive within the meaning of the law if:

> It is oppressive or otherwise unconscionable in any respect; or
> (1) It fails to comply with existing statutes, rules, regulations or laws, meant for protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth with protection; or
> (2) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, §2.

940 Code of Mass. Regulations, § 3.16. It is similarly an unfair or deceptive act to utilize "[a]ny knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding. . ." 940 C.M.R. §7.07(2).

### V.    Plaintiff's Claims

**A. Violation of the Fair Debt Collection Practices Act**

62. Defendant's current assertion that the debt owed is over $300,000 constitutes the use of false, deceptive and misleading representations or means to collect a debt and the threat of action that the Defendant could not lawfully take, where Defendant has

provided Debtor with widely varying information regarding the amount due and has failed to provide a clear, understandable and appropriate accounting of any sums allegedly owing, and of those sums paid by the Debtor.

63. Defendant's current assertion that the debt owed is over $300,000 constitutes the use of false, deceptive and misleading representations or means to collect a debt and the threat of action that the Defendant can not lawfully take, where Defendant can not demonstrate all of the necessary terms of the lost note to assert such an obligation and where Defendant has not sufficiently demonstrated that it was and is the holder of the Note related to the Second ITT Loan.

64. Wherefore, the Debtor requests an award in an amount equal to the sum of her actual damages, including damages for emotional distress, plus $1,000, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k).

**B. Truth In Lending Act**

65. Defendant and its predecessors in interest violated the Truth in Lending Act by failing to accurately disclose to the Debtor the finance charge, the annual percentage rate, the number, amount and due dates of the payments required to satisfy her obligation: (i) in 1988, at the time of the First ITT Loan, (ii) in 1991, at the time the First ITT Loan was refinanced with the Second ITT Loan, (iii) at the time of the loan modification in 1993, and (iv) at the time of the loan modification in 1995.

66. By reason of the failure of the Defendant or its predecessors in interest to provide a proper disclosure statement, Debtor-Plaintiff has retained her right, by way of recoupment, to rescind both the First ITT Loan and the Second ITT Loan.

67. Wherefore, the Debtor-Plaintiff requests that any security interest held by Defendant be declared void, that the claim, if any, be declared wholly unsecured, and that Debtor-Plaintiff be awarded damages in an amount equal to the sum of her actual damages, including damages for emotional distress, $2,000, costs, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1640 (a).

**C. Real Estate Settlement Procedures Act**

68. Defendant violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 (e), by failing to provide Debtor-Plaintiff with the information requested in her letter of April 24, 1998, or an explanation as to why such information was unavailable within 60 days of said request.

69. Wherefore, the Debtor-Plaintiff requests that she be awarded damages in an amount equal to the sum of her actual damages, including damages for emotional distress, $1,000.00, costs, and reasonable attorney's fees, pursuant to 12 U.S.C. § 2605(f).

**D. Massachusetts Consumer Credit Cost Disclosure Act**

70. Defendant or its predecessors in interest violated the Massachusetts Consumer credit Cost Disclosure Act by failing to provide Debtor-Plaintiff with a disclosure statement in conformity with MCCCDA and by failing to accurately disclose to the Debtor the finance charge, the annual percentage rate, the number, amount and due dates for the payments required to satisfy her obligation: (i) in 1988, at the time of the First ITT Loan, (ii) in 1991, at the time the First ITT Loan was refinanced with the Second ITT Loan, (iii) at the time of the loan modification in 1993, and (iv) at the time of the loan modification in 1995.

71. By reason of the failure of the Defendant or its predecessors interest to provide a proper disclosure statement, Debtor-Plaintiff has retained her right, by way of recoupment, to rescind both the First ITT Loan and the Second ITT Loan.

72. Wherefore, the Debtor-Plaintiff requests that any security interest held by the Defendant be declared void, that the claim, if any, be declared wholly unsecured, and that the Debtor-Plaintiff be awarded damages in an amount equal to the sum of her actual damages, including damages for emotional distress, $2,000, costs, and reasonable attorney's fees, pursuant to Mass. G.L. c. 140D, § 32.

**E. Violation of Mass. G.L. c. 183, § 60**

73. TransAmerica's initial demand and the Defendant's subsequent demand that Debtor make a balloon payment in excess of $186,000.00 after the maturity of the Second ITT Loan violated Mass. G.L. c. 183, § 60.

74. Wherefore, Debtor requests that the Court declare the rights of the parties with respect to Mass. G.L. c. 183, § 60, and enjoin the Defendant from failing to comply herewith.

**F. Violation of Mass. G.L. c. 183, § 63**

75. ITT violated Mass G.L. c. 183, § 63 by charging Debtor excessive fees for both the First ITT Loan and the Second ITT Loan. Debtor is entitled to relief from the Defendant for violations of Mass. G.L. c. 183, § 63 by way of recoupment.

76. Wherefore, the Debtor requests that the Court declare the rights of the parties with respect to Mass. G.L. c. 183, § 63 and award damages in an amount equal to the sum of her actual damages.

### G. Massachusetts Consumer Protection Act

77. The known terms of the Second ITT Loan are so oppressive and otherwise unconscionable so as to constitute an act that is unfair and deceptive within the meaning of Mass. G.L. c. 93A. These terms, upon information and belief, included an the annual percentage rate that was greater than 16%, excessive finance charges, negative amortization, a five year loan term with a balloon payment due at maturity, and an annual mortgage obligation was almost 100% of Debtor and Co-debtor's combined annual income.

78. Violations of the Truth in Lending Act, Fair Debt Collection Practices Act, and Massachusetts Credit Cost Disclosure Act, and Mass. G.L. c 183, § 60 and 63 also constitute unfair and deceptive acts within the meaning of Mass. G.L. c. 93A.

79. Given the amount paid for the Note, if any, by the Defendant, Defendant's assertions as to amounts owed and attempts to profit from Lender's unconscionable conduct constitute unfair and deceptive acts within the meaning of Mass. G.L. c. 93A.

80. Defendant's unfair or deceptive conduct constituted a knowing willful violation of Section 2 of the Massachusetts Consumer Protection Act. Defendant's continuing demand for payment in excess of $300,000.00 is made in bad faith with knowledge or reason to know that the act or practice complained of violated said provision.

81. Defendant is liable to the Debtor-Plaintiff for multiple damages, costs, and reasonable attorney's fees, as well as such equitable relief to which Debtor-Plaintiff may be entitled under Mass. G.L. c. 93A, § 9(1), (3) and (4). Wherefore, the Debtor-Plaintiff requests that the Court award her treble damages, plus her costs and reasonable attorney's fees, for all injury suffered on account of the unfair and deceptive conduct of the Defendant and its predecessors in interest.

### H. Unconscionability

82. The sum total of the provisions of the Second ITT Loan is so oppressive and drives so hard a bargain as to be unconscionable, where, upon information and belief, the annual percentage rate was greater than 16%, there were excessive finance charges, the loan was negatively amortized, the term of the loan was five years with a balloon payment due at maturity, and where the annual mortgage obligation was almost 100% of Debtor and Co-debtor's combined annual income.

83. Wherefore, the Debtor-Plaintiff requests that the Court refuse to enforce the contract and award the Debtor actual and consequential damages resulting from the unconscionable contract.

### I. Breach of Contract

84. Defendant and its predecessors in interest breached the contract with the Debtor-Plaintiff and their duty of good faith and fair dealing (i) in seeking to collect monies in amounts to which they were not entitled, or at times at which they were not entitled to do so under the terms of the parties' agreement, (ii) in not properly crediting Debtor's payments to her account, (iii) in failing to provide Debtor with loan

documentation upon request, (iv) in failing otherwise to act with good faith and in fair dealing, and (v) in commencing foreclosure under the foregoing circumstances (on account of which the Defendant sought yet additional costs and attorney's fees).

85. Wherefore, the Debtor-Plaintiff requests that the Court award her actual and consequential damages arising out of the breach of contract.

86. The Debtor-Plaintiff requests such other relief to which she may be entitled.

Respectfully submitted,

Pearl Maxwell
By Her Attorneys

_____
Tara Twomey, Esq.
BBO# 640137
Legal Services Center
122 Boylston Street
Jamaica Plain, MA 02130
Plain, MA 02130
(617) 522-3003

Date: November 29, 2000